**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

**CHARISA WHITE,**                                    10-CV-1176-BR

       **Plaintiff,**

                                  **OPINION AND ORDER**

**v.**

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security,**

       **Defendant.**


**TIM D. WILBORN**
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, OR 97045
(503) 632-1120

       Attorneys for Plaintiff


1  -  OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003
**DAVID MORADO**
Regional Chief Counsel
**LISA GOLDOFTAS**
Special Assistants United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-3858

        Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff Charisa White seeks judicial review of a final
decision of the Commissioner of the Social Security
Administration (SSA) in which he denied Plaintiff's application
for Disability Insurance Benefits (DIB) and Supplemental Security
Income (SSI) under Titles II and XVI of  the Social Security Act
respectively.  This Court has jurisdiction to review the
Commissioner's decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **REVERSES** the decision
of the Commissioner and **REMANDS** this matter pursuant to sentence
four of 42 U.S.C. § 405(g) for the immediate calculation and
award of benefits.

2  -  OPINION AND ORDER

## ADMINISTRATIVE HISTORY

On November 7, 2006, Plaintiff filed an application for SSI and alleged a disability onset date of January 7, 2003.  Tr. 100-02.[1]  On November 17, 2006, Plaintiff filed her application for DIB and alleged a disability onset date of July 19, 2003.  Tr. 103-05.[2]  Her applications were denied initially and on reconsideration.  Tr. 45-48.  An Administrative Law Judge (ALJ) held a hearing on November 16, 2009.  Tr. 29-44.  Plaintiff was represented by an attorney at the hearing.  Tr. 29.  Plaintiff and a Vocational Expert (VE) testified.  Tr. 31-44.

An ALJ issued an opinion on December 7, 2009, and found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 12-23.  That decision became the final decision of the Commissioner on July 29, 2010, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-3.

On September 28, 2010, Plaintiff filed her Complaint seeking review by this Court of the Commissioner's decision

---

[1] Citations to the official transcript of record filed by the Commissioner on March 18, 2011, are referred to as "Tr."

[2] The Administrative Law Judge found Plaintiff applied for SSI and DIB on October 11, 2006, and alleged a disability onset date of July 19, 2003, as to each application.  The ALJ did not provide any citation to support this finding, however, and the record reflects the dates set out by the Court.

## BACKGROUND

Plaintiff was thirty-three years old at the time of the most recent hearing.  Tr. 32.  Plaintiff did not finish high school but obtained a high-school equivalency degree.  Tr. 32.  She has performed past work as a garment sorter, sandwich maker, retail clerk, and cashier.  Tr. 41.

Plaintiff has been diagnosed with migraine headaches, seizure disorder, history of bilateral knee surgeries, hypertension, obesity, Mollaret's meningitis, patellafemoral chondromalacia, polycystic ovary disease, proteinuria, thyroid dysfunction, marked deformities of her lower extremities, degenerative changes and arthritis in both knees, and degenerative changes in her hips and lower back.  Tr. 237-75, 328, 520, 525, 529, 532.

Plaintiff has a history of sexual abuse and sexual assault.  Tr. 542-46.  Plaintiff has also been diagnosed with depression; anxiety disorder; post-traumatic stress syndrome (PTSD); and personality disorder with antisocial, avoidant, and histrionic traits.  Tr. 477-80, 554-56.  Plaintiff has struggled with polysubstance abuse and addiction since the age of thirteen and has been incarcerated several times related to substance abuse, prostitution, and theft.  Tr. 542-45, 589-90.

Plaintiff alleges she is disabled due to depression; PTSD; anxiety; arthritis; and pain in her knees, hips, and lower back.

Tr. 125-26.  She alleges her impairments limit her ability to stand and to walk, to sit, to reach, to kneel, to lift and to carry, to bend, to climb stairs, and to get along with others. Tr. 126, 151.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After reviewing the medical records, the Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 14-20.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.*

5  -  OPINION AND ORDER

*Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is

6  -  OPINION AND ORDER

potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R.

§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d
1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's
RFC is at the heart of Steps Four and Five of the sequential
analysis engaged in by the ALJ when determining whether a
claimant can still work despite severe medical impairments.  An
improper evaluation of the claimant's ability to perform specific
work-related functions "could make the difference between a
finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

    In Step Four, the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See
also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

    If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20
C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden
shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can perform.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The
Commissioner may satisfy this burden through the testimony of a

8  -  OPINION AND ORDER

VE or by reference to the Medical-Vocational Guidelines set forth

in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.

If the Commissioner meets this burden, the claimant is not

disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


### **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff did not engage in

substantial gainful activity since July 19, 2003.  Tr. 14.

At Step Two, the ALJ found Plaintiff has the following

severe impairments:  obesity, status post bilateral knee

surgeries, chronic pain, depression, anxiety, personality

disorder, PTSD, and history of polysubstance abuse.  Tr. 14.

At Step Three, the ALJ found Plaintiff does not have an

impairment or combination of impairments that meets or medically

equals a Listed Impairment in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  Tr. 15-16.  The ALJ found Plaintiff can perform a

limited range of sedentary work and has the RFC to

> only occasionally stoop, crouch, crawl, and
> kneel, and only occasionally climb ramps and
> stairs; she may frequently balance, but never
> climb ladders, ropes or scaffolds, and she
> must avoid concentrated exposure to hazards;
> she is able to understand, remember and carry
> out short simple instructions and perform
> routine tasks; she should have no interaction
> with the general public and only superficial
> interaction with co-workers and supervisors.

Tr. 16-17.

At Step Four, the ALJ concluded Plaintiff is unable to

9  -  OPINION AND ORDER

perform any of her past relevant work.  Tr. 21.

At Step Five, the ALJ concluded Plaintiff has a sufficient RFC to perform jobs that exist in significant numbers in the national economy.  Tr. 22.  Specifically, the ALJ found Plaintiff has the ability to perform jobs that require sedentary work such as taper-and wafer-breaker, which is a position available in the semi-conductor industry.  Tr. 22.  Thus, the ALJ concluded Plaintiff is not disabled and, therefore, is not entitled to Social Security benefits.  Tr. 23.


## DISCUSSION

Plaintiff contends the ALJ erred by improperly discrediting the medical opinions of Plaintiff's treating physician Geoffrey Baum, D.O.; examining physician Kenneth Melvin, M.D.; and examining psychologist Jill E. Spendal, Psy.D.  Plaintiff also contends the ALJ erred by (1) improperly discrediting the lay-witness statements by Jacqueline Kelsey and Jacob Childers as to the intensity, persistence, and limiting effect of Plaintiff's symptoms and (2) failing to include all of Plaintiff's functional limitations in formulating the hypothetical posed to the VE.

**I.   ALJ's Reasons for Discrediting the Opinions of Drs. Baum, Melvin, and Spendal.**

Plaintiff contends the ALJ did not give legally sufficient reasons for discrediting the opinions of Drs. Baum, Melvin, and

Spendal.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at 830-32.  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  *Id.*

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is

supported by other evidence in the record. *Id.* at 600.

**A.   Dr. Baum's Opinion.**

Dr. Baum was Plaintiff's treating physician in 2008 and 2009.  Tr. 521-25, 528.  Dr. Baum diagnosed Plaintiff with chronic pain due to "marked deformity of the lower extremities," including absent medial meniscus in her left knee, arthritic changes in both knees, proximal tibial deformity, moderately severe arthritis in her hips, limited range of motion in both hips, intoeing of her feet, and chronic lumbar spine strain. Tr. 524-25.  Dr. Baum concluded these conditions limit Plaintiff's ability to walk, to sit, to stand, to climb, and to complete a normal workday without interruption from psychological problems and without an unreasonable number of rest periods. Tr. 523-25, 528.  On August 26, 2008, in fact, Dr. Baum concluded Plaintiff had been continuously unable to perform even sedentary work on a regular and continuing schedule of eight hours a day and five days a week due to her medical conditions since January 2005.  Tr. 523-24.  Dr. Baum stated the basis for his opinion was Plaintiff's medical history, clinical findings, laboratory findings, diagnoses, and Plaintiff's responses to treatment.  Tr. 521.

**1.   ALJ's Decision.**

The ALJ concluded Dr. Baum's opinion about Plaintiff's limitations deserves "little weight" on three grounds:  (1) Dr.

Baum's conclusions from January 2008 and August 2008 are
contradictory, (2) Dr. Baum's opinion is inconsistent with the
record as a whole, and (3) Dr. Baum's opinion as to Plaintiff's
disability is belied by Plaintiff's activities of daily living
(ADLs).  Tr. 20.

   **2.  Analysis.**

      Plaintiff contends the ALJ did not provide clear and
convincing bases for rejecting Dr. Baum's opinion.  Although the
ALJ found Dr. Baum's opinion to be inconsistent with the record
as a whole, the ALJ did not point to any specific contradictory
medical evidence in the record.  Tr. 20.  The only medical
evidence discussed by the ALJ that could be considered
inconsistent are the April and November 2007 opinions of two
nonexamining Disability Determination Services (DDS) physicians,
Drs. Neal E. Berner, M.D., and Sharon B. Eder, M.D.[3]  Tr. 18.
The ALJ, however, determined the DDS physicians' opinions that
Plaintiff is capable of light work were not supported by the
record and that more recent evidence in the record established
Plaintiff's conditions limit her to sedentary work.  Tr. 18.
Even if the ALJ had relied on the DDS physicians' opinions, the
opinion of a nonexamining physician alone cannot constitute a

---

   [3] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a).

sufficient basis for discrediting the opinion of a treating physician. *See Lester*, 81 F.3d at 831. In any event, the physical and mental limitations set out by Dr. Baum are supported in the record by Dr. Melvin, Plaintiff's treating physician, in his September 2009 medical statement and by Dr. Spendal, Plaintiff's examining psychologist, in her September 2008 psychological evaluation. Both physicians concluded Plaintiff is unable to perform even sedentary work on a regular and continuing basis. Tr. 529-32, 542-58. Thus, Dr. Baum's opinion is not "inconsistent with the record as a whole."

As noted, the ALJ concluded Dr. Baum's January 2008 release for Plaintiff to attend the JOBS employment program contradicts Dr. Baum's August 2008 statement that Plaintiff is disabled and unable to maintain a regular and continuing work schedule even at a sedentary level. Tr. 20. In particular, on January 17, 2008, Dr. Baum released Plaintiff to attend the JOBS Program for eight hours a day and five days a week with a "guarded" prognosis based on the degenerative nature of Plaintiff's conditions. Tr. 528. Dr. Baum's JOBS release form, however, only released Plaintiff for "modified employment" situations that accommodate the needs of the participant rather than for "regular employment," which does not provide accommodations. Tr. 528. These "modified employment" activities included sedentary classroom activities such as instruction in life skills, job searches, and computer

skills; work experience in a "sheltered" environment; 60-90 minute sessions to address self-esteem, time management, goal setting, etc.; and limited work experience.  Tr. 528.  Dr. Baum indicated Plaintiff could perform these activities for eight hours a day five days a week, but also noted Plaintiff's prognosis was "guarded" because her condition is degenerative and would last longer than a year.

Tr. 528.  Eight months later in August 2008, Dr. Baum concluded Plaintiff's condition had rendered her continuously unable to complete a regular and continuing work schedule at even a sedentary level since January 2005 based on both physical and psychological limitations.  Tr. 523.

As noted, the record reflects a significant difference between a release for participation in the JOBS program, which seeks to train individuals to be self-sufficient in an effort to make them capable of handling regular employment, and regular employment itself.  Furthermore, Dr. Baum's January 2008 release anticipated Plaintiff's condition would worsen over time as reflected in his "guarded" prognosis.  Accordingly, the Court does not find any inconsistency between Dr. Baum's January 2008 JOBS training release and his August 2008 opinion as to Plaintiff's inability to perform even sedentary work due to her physical and mental impairments.

The ALJ also concluded Dr. Baum's August 2008 opinion is

inconsistent with Plaintiff's ADLs.  The ALJ, however, did not specifically identify why Plaintiff's ADLs demonstrate she is more capable than Dr. Baum described.  Although the ALJ summarizes Plaintiff's activities of daily living elsewhere in his opinion, his summary does not include more than an ability to do limited daily activities such as simple cooking, basic housework, and limited shopping.  Tr. 17, 35-37.  *See, e.g., Smolen*, 80 F.3d at 1284 n.7 (complete incapacity not required to demonstrate disability); *Lester*, 81 F.3d at 833 (sporadic ability to do work is not inconsistent with disability).  Ultimately the ALJ must assess Plaintiff's ability to *sustain* employment on a regular and continuing basis.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).  In any event, the Court does not find Plaintiff's ADLs are a basis for discrediting Dr. Baum's opinion.

The Court, therefore, concludes on this record that the ALJ erred when he discredited Dr. Baum's opinion without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

### B.   Dr. Melvin's Opinion.

Dr. Melvin treated Plaintiff in 2009.  Tr. 529.  On September 29, 2009, Dr. Melvin concluded Plaintiff was unable to perform even sedentary work on a regular and continuing basis due to congenital defects of her legs with compensatory degenerative changes in her knees, hips, and low back, which cause her pain

and reduced mobility and predispose her to further injury.
Tr. 532.  Dr. Melvin opined these conditions have rendered
Plaintiff unable to work since November 2004.  Tr. 532.  Dr.
Melvin stated the basis for his opinion was Plaintiff's medical
history, clinical findings, laboratory findings, diagnoses, and
her responses to treatment.  Tr. 529.

### 1.    ALJ's Decision.

The ALJ afforded Dr. Melvin's opinion "little weight"
on two grounds:  (1) Dr. Melvin's opinion is inconsistent with
the record as a whole and (2) Dr. Melvin's opinion as to
Plaintiff's disability is belied by Plaintiff's ADLs).  Tr. 20.

### 2.    Analysis.

As with the opinion of Dr. Baum, the ALJ discredited
Dr. Melvin's opinion as "inconsistent with the record as a whole"
without identifying any evidence that undermines Dr. Melvin's
opinion.  Tr. 20.  Again, the record reveals the opinion of two
nonexamining DDS physicians is the only medical evidence
considered by the ALJ that contradicts Dr. Melvin's assessment,
and, as noted, the ALJ concluded the record reflects Plaintiff is
more limited than ultimately assessed by the DDS physicians.
Tr. 18, 20.  The Court notes that Dr. Melvin's opinion was also
issued roughly two years after the DDS physicians reviewed
Plaintiff's medical file and represents a more current opinion of
Plaintiff's degenerative physical conditions.  In any event,

Dr. Melvin's opinion that Plaintiff is unable to maintain even sedentary work on a regular and continuing basis due to her physical impairments is consistent with the opinion of Dr. Baum. As with the opinion of Dr. Baum, the Court does not find Dr. Melvin's opinion is inconsistent with the record as a whole. Even if the ALJ relied on the opinions of the DDS physicians, the Court does not find those opinions to be sufficient grounds on this record to discredit Dr. Melvin's opinion as Plaintiff's treating physician.

As with Dr. Baum, the ALJ found Plaintiff's ADLs undermine Dr. Melvin's opinion.  For the same reasons set out above, the Court concludes Plaintiff's ADLs are not a sufficient basis on this record to undermine Dr. Melvin's opinion.

On this record, therefore, the Court concludes the ALJ erred when he failed to provide legally sufficient reasons supported by substantial evidence in the record for discrediting the opinion of Dr. Melvin.

**C.   Dr. Spendal's Opinion.**

Dr. Spendal examined Plaintiff on September 24, 2008, and performed a battery of cognitive and psychological tests to determine Plaintiff's strengths and weaknesses and to suggest recommendations and/or accommodations with respect to Plaintiff's employment and educational goals.  Tr. 542-58.  In addition to performing cognitive and psychological tests, Dr. Spendal set out

a detailed summary of Plaintiff's social, educational, work, medical, substance abuse, and legal history. Tr. 542-49.

Based on her examination, Dr. Spendal diagnosed Plaintiff with chronic PTSD; possible depression; polysubstance dependence in early remission; and borderline personality traits including antisocial, histrionic, and avoidant traits. Tr. 554. Dr. Spendal concluded Plaintiff is moderately limited in her ability to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically-based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to maintain socially appropriate behavior, to adhere to basic standards of neatness and cleanliness, and to travel to unfamiliar places or use public transit. Tr. 558. "Moderate" limitations are defined as those that "seriously interfere[] with the individual's ability to perform the designated activity on a regular and sustained basis, *i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule." Tr. 557. Dr. Spendal also concluded Plaintiff is markedly limited in her ability to work in coordination with or in proximity to others without being distracted by them, to accept instructions and to respond appropriately to criticism from supervisors, and to get along

19 - OPINION AND ORDER

with co-workers or peers without distracting them or exhibiting

behavioral extremes.  Tr. 558.  "Marked" limitations are

described as those that "preclude[] the ability to perform the

designated activity on a regular and sustained basis."  Tr. 557.

Ultimately Dr. Spendal concluded:

> When Charisa's profile is looked at as a
> whole, she has significant barriers to
> employment.  Her emotional and personality
> functioning are the greatest barriers. Her
> ability to be out in the world and act
> appropriately is limited.  Her fear levels
> are quite high and she has no ability to calm
> herself or regulate her emotions once they me
> spiked.  She is likely to be inappropriate
> with people in a work setting due to her
> personality disorder.  She may be prone to
> exploit people and to swing from joining
> overly closely to feuding with co-workers.
> She is quick to irritability and becomes very
> angry if "not appropriately respected" by
> others.
>
>                    * * *
>
> Charisa is encouraged to carry on with the
> disability process given the length of time
> it will take to stabilize her maladaptive
> personality features and once that is done a
> better sense of her Axis I disorders can be
> obtained, and then those will need to be
> treated as well. . . .  If Charisa is denied
> disability benefits she should be referred to
> VRD since she will have significant barriers
> in interpersonal skills and work tolerance.

Tr. 555-56.

> **1.  ALJ's Decision.**

The ALJ gave Dr. Spendal's opinion "some weight"

because Dr. Spendal is a mental-health specialist who examined

20 -  OPINION AND ORDER

Plaintiff.  Tr. 19.  The ALJ emphasized Dr. Spendal's conclusions
that Plaintiff is markedly limited in her ability "to work in
coordination with or proximity to others without being distracted
by them and in her ability to accept instructions and respond
appropriately to criticism from supervisors, and in her ability
to get along with co-workers or peers without distracting them or
exhibiting behavioral extremes."  Tr. 19.  The ALJ, however,
concluded his RFC properly accounted for the limitations set out
in Dr. Spendal's opinion by limiting Plaintiff to "no interaction
with the general public and only superficial interaction with
co-workers and supervisors."  Tr. 19.  The ALJ also noted
Dr. Spendal's conclusion that Plaintiff's prognosis is "fair with
intensive treatment."  Tr. 19.

     **2.   Analysis.**

     Plaintiff contends the ALJ did not give legally
sufficient reasons for discrediting Dr. Spendal's opinion, and,
in any event, the ALJ did not include the limitations set out by
Dr. Spendal in his RFC.  The ALJ did not identify any specific
bases for assigning Dr. Spendal's opinion "some weight" beyond,
as noted, the ALJ's observation that Dr. Spendal is a mental-
health specialist who examined Plaintiff.  Tr. 19.  Although the
ALJ considered the opinion of DDS psychologist Paul Rethinger,
Ph.D., in which he concluded Plaintiff's anxiety-related and
affective disorders mildly restrict Plaintiff's ADLs and

21 -  OPINION AND ORDER

moderately restrict Plaintiff's ability to maintain social function, concentration, persistence, and pace, the ALJ did not conclude that Dr. Rethinger's opinion contradicted Dr. Spendal's opinion.  Tr. 18, 472-82.  In any event, Dr. Rethinger did not evaluate Plaintiff's RFC based on her psychological impairments despite Dr. Rethinger's conclusion that an RFC was necessary. Tr. 484.

In his assessment of Plaintiff's RFC, the ALJ included only the following mental limitations on Plaintiff's ability to perform work-related functions:  "[Plaintiff] is able to understand, remember and carry out short simple instructions and perform routine tasks; she should have no interaction with the general public and only superficial interaction with co-workers and supervisors."  The ALJ concluded that portion of the RFC "takes claimant's emotional and personality functioning into consideration by limiting her to no interaction with the general public and only superficial interaction with co-workers and supervisors."  Tr. 19.  The ALJ, however, did not state any justification based on the record for rejecting the long list of psychological limitations identified by Dr. Spendal relating to, inter alia, Plaintiff's ability to maintain regular attendance, to be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an

22 -  OPINION AND ORDER

unreasonable number and length of rest periods, to accept
instructions and to respond appropriately to criticism from
supervisors, or to get along with co-workers or peers without
distracting them or exhibiting behavioral extremes.
Specifically, the ALJ did not explain how "superficial
interaction" with coworkers and supervisors would be sufficient
to account for Dr. Spendal's opinion that Plaintiff does not have
the ability to respond to supervisors appropriately or to work in
proximity with others without distracting them or exhibiting
behavioral extremes.  Tr. 557-58.

On this record the Court concludes the ALJ, in effect,
rejected much of Dr. Spendal's opinion when the ALJ failed to
include the numerous psychological limitations identified by
Dr. Spendal in her evaluation of Plaintiff's RFC.  Tr. 16-17, 19.
Accordingly, the Court concludes the ALJ erred when he gave only
"some weight" to Dr. Spendal's opinion without providing any
legally sufficient reasons supported by substantial evidence in
the record for doing so.

### REMAND

Having found the ALJ erred when he improperly discredited
the opinions of Drs. Baum, Melvin, and Spendal, the Court must
determine whether to remand this matter for further proceedings
or to remand for calculation of benefits.

The decision whether to remand for further proceedings or

23 -   OPINION AND ORDER

for immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Id.* at 1179.  The court may
"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172,
1178 (9th Cir. 2000).  The court should grant an immediate award
of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings.  *Id.* at 1178 n.2.

Because the ALJ did not provide legally sufficient reasons
supported by substantial evidence in the record for discrediting
the opinions of Drs. Baum, Melvin, and Spendal, the Court credits
those opinions as true.  *See Benecke v. Barnhart,* 379 F.3d 587,
594 (9th Cir. 2004)(when "the ALJ fail[s] to provide legally
sufficient reasons for rejecting . . . [a] physician['s]
opinion[]," the court credits that opinion as true).  *See also*

24 - OPINION AND ORDER

*Lester*, 81 F.3d at 834 (improperly-rejected physician opinion is credited as a matter of law).

When credited, these medical opinions establish Plaintiff suffers from severe physical and mental conditions that significantly limit her ability to perform work-related functions.  The credited physicians agree that Plaintiff cannot sustain even sedentary work on a regular and continuing basis because, *inter alia*, Plaintiff's conditions render her unable to be punctual, to maintain regular attendance at work, to complete a workday or workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, or to work appropriately with coworkers or supervisors.  The record, therefore, reflects Plaintiff's impairments render her unable to work on a regular and continuing basis for "8 hours a day, for 5 days a week, or an equivalent schedule."  *See* SSR 96-8p, at *1.

Although the VE's testimony at the hearing was limited to the hypothetical posed by the ALJ, and, therefore, the VE did not address the specific limitations set out by the now-credited physicians, the Court concludes a remand for further proceedings would be futile because the ALJ would be required to find that Plaintiff is disabled based on the credited opinions.  Under similar circumstances, the Ninth Circuit held:

> The district court remanded for
> additional administrative proceedings instead

25 -  OPINION AND ORDER

of an award of benefits because the
vocational expert testimony in this case was
quite limited.  The district court, whose
opinion generally is thorough and
well-reasoned, understood *Harman* to require
remand for further proceedings whenever there
is not vocational expert testimony stating
that a person with the precise limitations
established by the improperly rejected
evidence is disabled.  *See Harman*, 211 F.3d
at 1178.  We now clarify that in the unusual
case in which it is clear from the record
that the claimant is unable to perform
gainful employment in the national economy,
even though the vocational expert did not
address the precise work limitations
established by the improperly discredited
testimony, remand for an immediate award of
benefits is appropriate.  In this case,
remanding for further administrative
proceedings would serve no useful purpose and
would unnecessarily extend Benecke's long
wait for benefits.

*Benecke*, 379 F.3d at 594-95.

Accordingly, the Court concludes on this record that
Plaintiff cannot sustain work-related physical activities on a
regular and continuing basis and, therefore, is disabled and is
entitled to benefits for the relevant period.  Thus, the Court
finds additional proceedings would not serve any useful purpose.

Because the Court has credited the opinions of Drs. Baum,
Melvin, and Spendal, which results in a finding that Plaintiff is
entitled to benefits, the Court does not need to address
Plaintiff's remaining arguments.

## CONCLUSION

26 -  OPINION AND ORDER

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this 20th day of January, 2012.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

27 -  OPINION AND ORDER